UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY GEITZ, | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-00394-SRC |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of the Social Security | ) |
| Administration[1], | ) |
| | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Jeffrey Geitz requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying his application for disability-insurance benefits and supplemental-security income under Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. The Court affirms the Commissioner's decision.

**I.    Procedural history**

Geitz filed a Title II application for disability-insurance benefits and a Title XVI application for supplemental-security income on August 22, 2014. Tr. 286. Geitz's insured status under Title II expired on December 31, 2013. The Social Security Administration initially denied his applications on December 24, 2014. Tr. 286, 312–25. Geitz requested a hearing before an ALJ on January 5, 2015 and testified before the ALJ on November 16, 2015. Tr. 286. After the hearing, the ALJ denied Geitz's application in a decision dated July 7, 2017. Tr. 286–

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

99. The Appeals Council granted Geitz's request for review, vacated the ALJ's prior decision, and remanded the claim back to the ALJ level for a new decision.  Tr. 305–8.

On April 26, 2019, following a second hearing, an ALJ found that Geitz was not disabled.  Tr. 10–21.  On January 14, 2020, the Appeals Council denied Geitz's request for review.  Tr. 1–5.  Thus, the ALJ's opinion stands as the final decision of the Commissioner.

## II. Decision of the ALJ

The ALJ determined that Geitz had several severe impairments, including post-traumatic and degenerative changes to his right ankle, right elbow, right shoulder, left shoulder, cervical spine, and lumbar spine.  Tr. 13.  The ALJ held that Geitz did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 16.  The ALJ determined that Geitz retained the residual functional capacity (RFC) to perform light work as defined at 20 C.F.R. §§ 404.1567(b) and 416.967(b), except Geitz could only lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently, and could sit/stand/walk for about 6 hours in an 8-hour workday.  Tr. 16.  Geitz could operate foot controls with the right foot occasionally, occasionally reach overhead bilaterally, and frequently reach in all other directions.  Tr. 16.  He could frequently balance, occasionally climb ramps and stairs, stoop, kneel and crouch, and never crawl or climb ladders, ropes or scaffolds.  Tr. 16.  He could not work at unprotected heights or around moving mechanical parts.  Tr. 16.  The ALJ found that Geitz's impairments would not preclude him from performing his former work as a mail clerk, so he was not disabled.  Tr. 19, 21.  Geitz appeals.  Docs. 1, 15.

### III. Legal standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of

age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment— and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (emphasis added).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Brock v. Astrue*,

674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At step five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016). The Eighth Circuit explained that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd*, 621 F.3d at 738) (internal quotations omitted).

**IV.     Discussion**

The ALJ determined at step two that Geitz had several severe physical impairments but that Geitz's mental impairments were non-severe under 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Tr. 13–16.  The ALJ found that Geitz had the medically determinable mental impairment of depression and evaluated it under the four broad domains of functioning in 20 C.F.R. §§ 404.1520a, 416.920a.  Tr. 13–16.  After conducting that evaluation, the ALJ determined that Geitz's depression was not severe because it did not cause "more than minimal limitation in the claimant's ability to perform basic mental work activities."  Tr. 13–16.  Geitz argues that the Court should remand because the ALJ failed to properly analyze Geitz's mental impairments in determining that they were non-severe.  Doc. 15 at 2–7.

A severe impairment "significantly limits your physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c), 416.920(c).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."  *Kirby*, 500 F.3d at 707.  If the impairment has "no more than a minimal effect on the claimant's ability to work," it is non-severe.  *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007).  The claimant has the burden of establishing that his impairment or combination of impairments are severe.  *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).  The Eighth Circuit has advised that the severity requirement is "not an onerous requirement for the claimant to meet, but it is also "not a toothless standard."  *See Kirby*, 500 F.3d at 707 (citations omitted).

The regulations provide specific criteria to evaluate mental impairments.  *See* 20 C.F.R. §§ 404.1520a, 416.920a.  The ALJ must first determine whether a claimant has a medically determinable mental impairment and then rate the degree of functional limitation resulting from

the impairment.  *See* 20 C.F.R. §§ 404.1520a(b), 416.920a(b).  In rating the degree of limitation, the ALJ "considers all relevant and available clinical signs and laboratory findings, the effects of [the claimant's] symptoms, and how [the claimant's] functioning may be affected by factors" such as "chronic mental disorders, structured settings, medication, and other treatment."  *See* 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1).  ALJs base their rating of the claimant's functional limitation on "the extent to which [the] impairment[] interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2).

To rate the claimant's degree of functional limitation, the ALJ must consider four broad functional areas and rate the claimant's degree of limitation in each area as none, mild, moderate, marked, or extreme.  *See* 20 C.F.R. §§ 404.1520a(c)(3)–(4), 416.920a(c)(3)–(4).  The four functional areas are:  understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  A medically determinable mental impairment that results in only "mild" limitations in the four broad domains of functioning is generally considered non-severe.  *See* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]").  A mild limitation is one where the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited."  20 C.F.R. § 404, Subpart P, Appendix. 1.

The ALJ properly considered the four functional areas in finding that Geitz does not have a severe mental impairment.  *See* 20 C.F.R. §§ 404.1520a(c)(3)–(4), 416.920a(c)(3)–(4).

Beginning with the first functional area, the ALJ found that Geitz has a mild limitation in understanding, remembering, or applying information. Tr. 15. This area refers to the claimant's ability to "learn, recall, and use information to perform work activities." 20 C.F.R. § 404, Subpart P, Appendix. 1. While Geitz reported trouble remembering things, the ALJ observed that he lives with his disabled mother and aunt and helps take care of them. Tr. 15, 200, 772. The ALJ pointed out that Geitz is capable of shopping for himself and performing errands. Tr. 15, 772. The ALJ relied on the opinion of Dr. Marsha Toll, a consultative examiner who reviewed Geitz's medical records in December 2014. Tr. 14–15. Dr. Toll concluded that Geitz had no limitations attributable to a mental impairment. Tr. 15, 265–271. Based on these facts, the ALJ found that Geitz has mild limitations in understanding, remembering, or applying information. Tr. 15.

Substantial evidence supports the ALJ's conclusion that Geitz has only mild limitations in the area of understanding, remembering, or applying information. Geitz lives with his mother, who has a history of strokes, and his aunt, who has dementia, and he cares for both of their daily needs. Tr. 772. He is also able to go grocery shopping, run errands, complete household chores, and cook on his own. Tr. 772. Although Dr. Amy Marty, who completed a consultative psychological examination of Geitz, noted that Geitz has some difficulty focusing, Geitz's treating medical providers repeatedly described his memory as "normal." Tr. 650, 664, 729. Additionally, as the ALJ observed, Geitz was not taking his medication when examined by Dr. Marty, which supports the ALJ's placing greater weight on other evidence in the record. Tr. 14, 769. Accordingly, substantial evidence supports the finding that Geitz only has mild limitations in the first functional area.

Shifting to the second functional area, the ALJ found that Geitz has a mild limitation in interacting with others. Tr. 15. This area refers to the claimant's ability to "relate to and work with supervisors, co-workers, and the public." 20 C.F.R. § 404, Subpart P, Appendix. 1. The ALJ reached her conclusion based on her review of the evidence related to Geitz's living situation and day-to-day activities. Tr. 15. Although Geitz indicated some social isolation, the ALJ noted that Geitz has a girlfriend who drives him to his appointments and to the store. Tr. 15, 772. The ALJ also observed Geitz is able to care for both his mother and his aunt in the midst of their disabilities, and he spends time with his family members. Tr. 15, 513–16. Given this evidence, the ALJ found that Geitz has mild limitations in this functional area.

Substantial evidence supports the ALJ's conclusion that Geitz has mild limitations in the second functional area. While he lives a fairly isolated lifestyle, Geitz lived with and cared for his mother and aunt, and he had a girlfriend. Tr. 15, 663, 763, 769, 772. Geitz leaves his house every week when he stays at his girlfriend's house for a few days at a time. Tr. 772. He also leaves the house to go shopping, run errands, and attend appointments, though his girlfriend drives him. Tr. 15, 772. Dr. Marty reported that Geitz had some "mild to moderate" problems in receptive or expressive language ability, but reported that Geitz was attentive, polite, cooperative, and engaged during the examination. Tr. 771. Other examination notes indicate that he was fully cooperative with his medical providers. Tr. 724, 728. Therefore, substantial evidence supports the ALJ's finding that Geitz has mild limitations in his ability to interact with others.

Next, the ALJ considered the third functional area, finding a mild limitation in Geitz's ability to concentrate, persist, and maintain pace. Tr. 15. This area refers to the claimant's ability to "focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. §

9

404, Subpart P, Appendix. 1. The ALJ observed that though Dr. Marty thought Geitz exhibited memory problems, requiring redirection during the examination, Dr. Toll had concluded that Geitz's records indicated no limitations at all due to a mental impairment. Tr. 15, 265–271, 772. The ALJ found that Geitz has mild limitations in this area, noting that his issues "appear to be related to chronic pain, as opposed to a medically determinable mental impairment." Tr. 15.

Substantial evidence supports the ALJ's finding that Geitz has a mild limitation in his ability to concentrate, persist, and maintain pace. Dr. Marty found that Geitz had moderate difficulties maintaining attention and concentration but also concluded that Geitz had "appropriate persistence and pace throughout the evaluation." Tr. 772. Later that same year, Geitz's concentration and attention were intact during a visit with his treating physician, Dr. Denise Buck. Tr. 729. Medical records show that Geitz repeatedly presented with an appropriate orientation to the place and situation and demonstrated normal insight and judgment. Tr. 650, 664, 698, 701, 706, 718, 721, 729. Accordingly, substantial evidence supports the ALJ's conclusion that Geitz has a mild limitation with respect to the third functional area.

Finally, the ALJ found in the fourth functional area that Geitz has a mild limitation in adapting or managing himself. Tr. 15–16. This area refers to the claimant's ability to "regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. § 404, Subpart P, Appendix. 1. She stated that most of Geitz's limitations in this area "appeared to be due to his financial situation." Tr. 15. The ALJ observed that Geitz did not possess a driver's license because of unpaid child support, but that he was recently injured as a driver in a motor vehicle incident. Tr. 15. While Geitz tested positive for marijuana after the accident, the record indicates that Geitz is generally capable of avoiding hazards on the road. Tr. 15. The ALJ pointed out that Geitz's medical providers found his dress and personal hygiene usually

10

unremarkable, and the ALJ observed that Geitz is capable of caring for his personal needs as well as the needs of his disabled mother and aunt. Tr. 16.

Substantial evidence supports the ALJ's finding in the fourth functional area. As mentioned above, Geitz not only takes care of his own personal needs, he also lives with and cares for his disabled mother and aunt. Tr. 772. He is able to shop for himself, run errands, cook, and perform household chores. Tr. 772. The record further demonstrates that his appearance and personal hygiene were usually unremarkable. Tr. 706, 732, 734, 736, 771. Geitz does not drive, but that is because his license was revoked for unpaid child support. Tr. 15, 763. Thus, substantial evidence supports the ALJ's finding that Geitz has a mild limitation in his ability to adapt or manage himself.

In sum, substantial evidence supports the ALJ's finding that Geitz's depression does not significantly limit his mental ability to perform basic work activities, as his functional limitations were "mild" at most. *See Kirby*, 500 F.3d at 707; *see also* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Thus, the ALJ appropriately determined that Geitz's depression does not constitute a severe mental impairment. *See id.*

Geitz argues that the ALJ failed to consider relevant evidence like Geitz's symptoms of depression and anxiety throughout the relevant time period, as well as an eventual recommendation by Dr. Buck that he see a psychiatrist in February 2018. Doc. 15 at 3–4. The Court finds Geitz's argument unsupported by the record.

Geitz first sought treatment for anxiety in March 2014, after his insured status for Title II benefits had expired in December 2013 and almost two years after his alleged onset date of April 15, 2012. Tr. 642. Dr. Vani Pachalla prescribed antidepressant medication, and by June 2014, Geitz reported he was "doing well" on medication, felt a lot better, and had no other complaints.

11

Tr. 644, 648. At the time, the provider's psychiatric examination returned normal results. Tr. 650. Later that year, in September 2014, Geitz visited the emergency room for a chronic cough and denied having any symptoms of depression. Tr. 706.

After over a year without any mental health treatment, Geitz presented to a different provider in October 2015, reporting depression. Tr. 728. Geitz told his provider that he took Cymbalta in the past, which "really helped," but he had run out of medication, and he described his mood as "lost and discouraged." Tr. 728. He restarted medication, and by the following month his mood was "pretty good." Tr. 727. During numerous emergency room visits for physical issues in 2015 and 2016, psychiatric examinations returned normal results. Tr. 674, 680, 698, 701. Geitz did not report any psychiatric symptoms at all until June 2016, when he again had run out of medication. Tr. 724. Geitz told his provider that his medications worked well for him when he took them. Tr. 724. Over a year and a half later, Geitz visited his doctor in February 2018 for ankle and foot pain, reporting that he had not been taking any of his medications. Tr. 887. His provider encouraged him to see a psychiatrist but did not prescribe additional medications or observe any other symptoms. Tr. 887. Geitz never saw a psychiatrist for his depression or anxiety. Tr. 14, 769. The record reveals no further treatment for mental impairments from February 2018 through the date of the ALJ's decision on April 26, 2019. Tr. 724.

As an initial matter, despite having the burden of proving his disability and providing medical evidence regarding the existence and severity of his impairments, *Mittlestedt*, 204 F.3d at 852, Geitz did not even allege he has a mental health impairment in his initial application for benefits on August 22, 2014. Tr. 497. The failure to allege disabling mental impairment in an application is significant, even if evidence of depression is later developed. *See Reed v. Astrue*,

2010 WL 1186458, at *12 (E.D. Mo. Mar. 29, 2010) (citing *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001)).

As the ALJ discussed, Geitz sought very little treatment for his mental impairments, and he went for substantial periods of time without any treatment at all. Tr. 13–14; *see also Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir. 1992) (lack of psychiatric treatment indicates that a mental impairment is non-severe); *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (extended gaps in treatment during the relevant period weigh against claimant's allegations of a disabling condition). Although Geitz claimed that financial constraints prevented him from seeking treatment, the ALJ observed that he had never raised this issue with his medical providers and that Geitz had successfully obtained treatment for a host of other conditions during the same period. Tr. 14. "It is for the ALJ in the first instance to determine a claimant's real motivation for failing to follow prescribed treatment or seek medical attention." *Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) (quoting *Hutsell v. Sullivan*, 892 F.2d 747, 750 n.2 (8th Cir. 1989)). Though not dispositive, Geitz's failure to seek and maintain regular treatment for his depression "indicate[s] the relative seriousness of [his] medical problem." *Id.* (quoting *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995)); *Williams*, 960 F.2d at 89.

Even when Geitz obtained treatment with antidepressant medication, his depression responded to medication. Tr. 13–14. When an impairment can be adequately controlled by treatment or medication, or is amenable to treatment, it does not support a finding of disability. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016); *Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014); *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (citation omitted)). Finally, Geitz's consistent failure to follow his treatment protocol by taking his prescribed

13

medication is inconsistent with his allegations of a disabling mental impairment. *See Whitman*, 762 F.3d at 706; *Hensley v. Colvin*, 829 F.3d 926, 933–934 (8th Cir. 2016) (ALJ properly discounted plaintiff's complaints because plaintiff failed to attend prescribed therapy for PTSD and there was no evidence that his failure to attend therapy sessions was a symptom of his mental illness.); *see also* 20 C.F.R. § 404.1530(a)–(b) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work . . . If you do not follow the prescribed treatment without a good reason, we will not find you disabled[.]").

With respect to Dr. Buck's recommendation that Geitz seek mental health treatment in February 2018, under the regulations, where a medical source provides an opinion outside his or her specialty, it is entitled to less weight. *See* 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Additionally, Geitz's failure to seek treatment from a mental-health provider further undermines the weight of this opinion. Tr. 14, 769. *See Reid v. Colvin*, 2015 WL 5485397, at *9 (E.D. Mo. Sept. 16, 2015).

Geitz cites *Runge v. Astrue*, 2011 WL 3320533, at *4 (W.D. Mo. Aug. 2, 2011), arguing that Geitz's treatment for depression and his self-reported limitations required the ALJ to find that he had a severe impairment. Doc. 15 at 4–5. But *Runge* is inapposite. Unlike the claimant in *Runge*, Geitz's treatment was interrupted by gaps of up to a year or more, during which time he did not report any symptoms of depression. *See Runge*, 2011 WL 3320533, at *4. Geitz also stopped taking his medication altogether on multiple occasions, supposedly without requiring any treatment at all during that time.

An ALJ need not find a severe impairment simply because a provider diagnoses the claimant with depression, *see Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011), or the

14

provider prescribes antidepressants. *See Matthews v. Bowen*, 879 F.2d 422, 424–25 (8th Cir. 1989). The Court must look to the record as a whole when reviewing the ALJ's severity determination, including the ALJ's findings regarding the claimant's functional limitations under the four broad areas in 20 C.F.R. §§ 404.1520a, 416.920a. *See Reid*, 2015 WL 5485397, at *7. In this case, as in *Reid*, Geitz "was not receiving any treatment or therapy, had not seen a psychiatrist or psychologist, and only episodically took [his] psychiatric medications." *Reid*, 2015 WL 548397, at *8 (affirming the ALJ's finding that claimant's depression was not a severe mental impairment). Geitz's treatment history actually supports the ALJ's finding that Geitz's impairment was not severe. *See Williams*, 960 F.2d at 89; *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) ("The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in [claimant's] mental capabilities disfavors a finding of disability.");

Geitz asserts that his ability to perform "minimal daily activities" like cooking, caring for himself, and spending time with his family, does not preclude a finding of disability. *Id.* at 5–6 (citing *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001)). While this may be true, the claimant bears the burden of providing evidence supporting a finding of a severe impairment and resulting disability; the ALJ needs only to rely on substantial evidence to support her determination regarding the claimant's function. *See Mittlestedt*, 204 F.3d at 852. "It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). If the Court finds that the evidence supports two inconsistent positions and one of those positions represents the ALJ's findings, the Court must affirm the ALJ's decision. *See Bagwell v. Comm'r, Soc. Sec. Admin.*, 916 F.3d 1117, 1119 (8th Cir. 2019).

The ALJ determined, based on the available medical evidence and her analysis of the four broad areas of mental functioning, that Geitz's mental impairments were not severe. Tr. 16. *See also* 20 C.F.R. §§ 404.1520a, 416.920a. Because substantial evidence supports the ALJ's determination, the Court affirms.

## V.     Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing *England v. Astrue*, 490 F.3d 1017, 1019 (8th Cir. 2007). Finding that the ALJ correctly applied the legal standards and that substantial evidence supports the ALJ's conclusions, the Court affirms the ALJ's decision.

Accordingly, the Court dismisses Geitz's Complaint with prejudice. Doc. 1. A separate judgment will accompany this Memorandum and Order. The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 17th day of September 2021.

                                                          STEPHEN R. CLARK
                                                          UNITED STATES DISTRICT JUDGE